■ GRACIE TERRACE APARTMENT CORPORATION, Respondent, v JONAS GOLD-STONE et al., Appellants. — Order, Supreme Court, New York County (Burton Sherman, J.), entered December 7, 1983, which denied defendants' motion for summary judgment, modified, on the law, without costs, to grant partial summary judgment declaring in favor of defendants on the first cause of action only to the extent that the eastern portion of the roof adjoining penthouse apartment B in the subject building is allocated exclusively to the occupants of that apartment, to grant summary judgment to defendants dismissing the second, third and fourth causes of action in the complaint, and otherwise affirmed. ¶ This action was commenced on January 13, 1983 by Gracie Terrace Apartment Corporation (GTAC), the owner of a building located at 605 East 82nd Street in Manhattan, for a declaratory judgment interpreting the terms of a proprietary lease issued on January 15, 1973 to defendant Dr. Jonas Goldstone for his cooperative duplex penthouse apartment (PH-B), and for damages against Dr. Goldstone and his wife Maro based on their allegedly unauthorized use over a 10-year period of certain areas of the building that are the subject of dispute. ¶ We agree with Special Term that factual issues preclude granting summary judgment declaring in favor of defendants with regard to their exclusive possessory interest in the southern and western portions of the roof, the hallway located at the southern end of the upper level of the apartment, and the stairways leading to that hallway. We find, however,

that the eastern portion of the roof was conveyed to Dr. Goldstone by the clear terms of the offering plan and the proprietary lease, which the parties agree are dispositive in the absence of ambiguity. ¶ The relevant terms of the proprietary lease, which follow precisely the language contained in the offering plan, define the premises conveyed as follows: "As used herein 'the apartment' means the rooms in the building as partitioned on the date of the execution of this lease designated by the above-stated apartment number, together with their appurtenances and fixtures and any closets, terraces, balconies, roof, or portion thereof outside of said partitioned rooms, which are allocated exclusively to the occupant of the apartment." ¶ Clause 7 of the lease provides as herein relevant: "If the apartment includes a terrace, balcony, or a portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease and to the use of the terrace, balcony or roof by the Lessor to the extent herein permitted. The Lessee's use thereof shall be subject to such regulations as may, from time to time, be prescribed by the Directors." ¶ It should be noted that there are only two penthouse apartments in the building, and only PH-B adjoins a portion of the roof. Whatever factual issues may exist with regard to the conveyance of the remainder of the disputed roof area, we find it clear, if the above language is to have any meaning at all, that the eastern portion of the roof directly adjoining the upstairs bedroom and its terrace was allocated exclusively to the occupants of PH-B, subject, of course, to other provisions of the lease and such regulations as may be prescribed by GTAC's directors. ¶ In confirmation of our declaration that PH-B includes the eastern portion of the roof (which is separated from the southern and western portions by a high-security fence), we note that it had been improved by the prior tenants of the apartment by the installation of planter boxes, wooden walkways and white gravel, and the prior tenants had for at least 10 years been permitted the exclusive use of this improved portion of the roof. This was made known to Dr. Goldstone by the sponsor's selling agent, Martin Goldstein (as detailed in Mr. Goldstein's affidavit), during prepurchase inspection tours in April of 1972, and was unquestionably a major inducing factor in Dr. Goldstone's decision to purchase the apartment. Mr. Goldstein had also been in charge of rental and management of the building from 1963 to 1973, and was fully familiar with the prior exclusive use of this area by the occupants of PH-B during that period. ¶ GTAC has submitted in opposition to defendants' motion for summary judgment an affidavit by Brewster Ives, chairman of the board of Douglas Elliman Gibbons & Ives, Inc., which had been retained in 1971 by the then owners of the building as their selling agent in converting the building to cooperative ownership. He affirms that without inspecting PH-B he allocated the shares to that apartment based upon a floor plan prepared in 1951, which did not show any portion of the roof as being part of PH-B. However, 13 NYCRR 17.4 (e) provides: "No room plan, chart or diagram may be used in connection with the offer or sale of any cooperative unit unless such document has been filed as part of the plan of the cooperative organization." Accordingly, this 1951 floor plan, which was not so filed, cannot be utilized to contradict the offering plan and proprietary lease which explicitly refer to an apartment which includes "a portion of the roof adjoining a penthouse" and grant the lessee "the exclusive use of * * * that portion of the roof appurtenant to the penthouse". As previously noted, only PH-B has a portion of the roof adjoining an apartment, and this language is therefore unquestionably referable to the conveyance of PH-B. ¶ Although not necessary to the construction of the relevant language here adopted, it seems to us confirmed by the affidavit of Joseph E. Browdy, a member of the firm of Paul, Weiss, Rifkind, Wharton &

Garrison, counsel to Norman and Rosita Winston, who were owners of the building at the time it was converted to cooperative ownership. In connection with his duties in drafting the offering plan, subscription agreement and proprietary lease in 1971, he inquired of Mr. Winston and his employees as to the historical use of the terraces, balconies, roof and portions thereof outside of adjoining apartments in the building, and specifically included the pertinent language regarding a portion of the roof adjoining a penthouse in those governing documents based upon the results of his investigation. Accordingly, neither the affidavit of Mr. Ives, nor the 1951 floor plan upon which he relied without making any inquiry as to the historical exclusive use of the roof by a penthouse tenant, can raise a genuine issue of fact with respect to the improved eastern portion of the roof outside the upper level of PH-B, and its inclusion as part of the apartment under the terms of the offering plan and the proprietary lease. ¶ Finally, we conclude that partial summary judgment dismissing the second, third and fourth causes of action for damages should have been granted to defendants. Regardless of whether the occupants of PH-B were conveyed the right to use exclusively the other portions of the roof, or the hallway and stairways leading to the roof, the actions of GTAC in permitting that use without objection for a period of almost 10 years constituted, at the very least, a revocable license to defendants for the use of those areas. This is particularly so where, as is here the case, the Goldstones were advised by plaintiff's selling agent at the time they considered purchasing the shares of PH-B, that the prior tenants had used these areas to the exclusion of the other tenants in the building, and the Goldstones observed tangible evidence supporting this prior use. Concur — Sandler, J. P., Ross, Bloom and Kassal, JJ.